# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| **Helen I. Levinson** | Bankruptcy No. 19-31961 |
| Debtor. | Honorable Timothy A. Barnes |

## NOTICE OF ROUTINE MOTION FOR RULE 2004 EXAM

**Please take notice** that on Monday**, March 30, 2020, at 1:00 P.M.** or as soon thereafter as counsel may be heard, the undersigned attorneys shall appear before the Honorable Timothy A. Barnes, United States Bankruptcy Judge for the Northern District of Illinois, in Courtroom 744 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there shall present the attached ***Routine Motion for Authority to Conduct Rule 2004 Examinations of Various Entities***, a copy of which is attached hereto and herewith served upon you.

**This Matter is treated as a Routine Motion pursuant to Local Rule 9013-9.A(10). The Court may grant the relief sought without presentation in open court and without a hearing.**

Dated: March 23, 2020                **Harvest Finance Group LLC**

                                     By: */s/ William J. Factor*
                                     One of Its Attorneys

William J. Factor ((6205675)
Ariane Holtschlag (6294327)
**FACTORLAW**
105 W. Madison, Suite 1500
Chicago, IL 60602
Tel:    (312) 878-6976
Fax:    (847) 574-8233
Email:  wfactor@wfactorlaw.com

{00164691}

## CERTIFICATE OF SERVICE

      I, William J. Factor, an attorney, hereby certify that on March 23, 2020, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing *Notice of Motion* and the accompanying *Motion* to be served on the parties listed below by electronic notice where indicated by the presence of an electronic address or by first class mail where indicated by the presence of a postal address by depositing with the United States Postal Service, Chicago, Illinois.

                                                      */s/* William J. Factor

### SERVICE LIST

**Registrants in the Case**
(Service via ECF)

| | |
|---|---|
| William J Factor | wfactor@wfactorlaw.com, wfactorlaw@gmail.com;bharlow@wfactorlaw.com;wfactor@ecf.inforuptcy.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com |
| Jonathan D. Golding | jgolding@goldinglaw.net |
| Richard N Golding | rgolding@goldinglaw.net |
| Patrick S Layng | USTPRegion11.ES.ECF@usdoj.gov |
| David P Leibowitz | dleibowitz@lodpl.com, il64@ecfcbis.com;dl@trustesolutions.com;dl@trustesolutions.net;ECF@lodpl.com |

**Non-Registrants**
(Service via US Mail)

Helen I Levinson
5220 Dobson Street
Skokie, IL 60077

PRA Receivables Management, LLC
Po Box 41021
Norfolk, VA 23541

American Express National Bank
C/O Becket and Lee LLP
Po Box 3001
Malvern, Pa 19355-0701

Nadia Karadsheh
4430 North Campbell
Chicago, IL 60625-3013

{00164691}

American Speech Language
  Hearing Association
Judith Page, President
10801 Rockville Pike
Rockville, MD 20852

American Speech Language
  Hearing Association
c/o Registered Agent
The Corporation Company. Inc.
112 SW 7th Street
Suite 3C
Topeka, KS 66603

Commission on Accreditation
   For Respiratory Care
c/o Brandon S. Thomas, registered agent
301 Commerce Street
Suite 3500
Fort Worth TX 76102-4135

Kathleen Megivern, Executive Director
Commission on Accreditation of Allied Health
Education Programs
25400 US Highway 19 N
Clearwater, Florida  33763-2149

Commission on Accreditation
   For Respiratory Care
Richard Walker, President
1248 Harwood Rd
Bedford, TX 76021-4244

Darla S Coffey, Pres.
Council on Social Work Education
1725 Duke Street
Suite 500
Alexandria, VA 22314 – 3457

Council on Social Work Education
Carter Land, registered agent
524 King St.
Alexandria, VA 22314 – 3104

Commission on Accreditation of
Allied Health Education Programs
Corporation Service Corporation,
Registered Agent
801 Adlai Stevenson Drive
Springfield, IL  62703

{00164691}

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| **Helen I. Levinson** | Bankruptcy No. 19-31961 |
| Debtor. | Honorable Timothy A. Barnes |

**ROUTINE MOTION FOR AUTHORIZATION TO
CONDUCT RULE 2004 EXAMINATIONS OF VARIOUS ENTITIES**

In support of its Motion for Authorization to Conduct Rule 2004 Examinations of Various Entities, Harvest Finance Group LLC, states as follows.

## INTRODUCTION

1. Harvest holds the largest claim against the Debtor, Helen Levinson. The Debtor owes Harvest more than $900,000 due to a guarantee she issued to backstop the debt her company, Indigo Interactive, owes Harvest. Harvest factored invoices for Indigo Interactive and was left with a large deficiency claim after Indigo imploded.

2. Harvest believes the Debtor and Indigo may have submitted to Harvest either fake invoices (i.e., invoices that were never sent to customers), invoices that misrepresented the scope of the work Indigo performed (i.e., invoices that were not for work performed but that represented pre-billings), or invoices for services that Indigo's customers never authorized, and that this scheme was perpetrated to fraudulently induce Harvest to continue to purchase invoices from Indigo and, presumably, prop-up a failing business.

3. As a result of the Debtor's conduct, the amount the Debtor owes Harvest may be nondischargeable under one or more prongs of 11 U.S. C. § 523.

{00164691}

4. Additionally, the Debtor submitted a financial statement to Harvest in 2015, which represented that the Debtor had a meaningful net worth and substantial assets, including a part interest in real property located in Jordan. The Debtor indicated her part interest was worth $300,000 (the "Jordan Property"). The Debtor did not disclose any of these assets in her bankruptcy schedules, even though the Debtor confirmed to Harvest in the summer of 2019, that she still had an interest in the Jordan Property. The failure to disclose the Jordan Property may give rise to a claim against the Debtor under 11 U.S.C. §727, as may the Debtor's failure to account for other assets in the financial statement.

5. In view of the foregoing, Harvest seeks an order from the Court authorizing it to conduct Rule 2004 examinations of the entities identified below (collectively, the "Examinees") so that Harvest can investigate, among other things, whether the Debtor created fake invoices for Indigo's customers or invoices that otherwise misrepresented the status of the work performed by Indigo. The rationale for examining the Examinees, either through document discovery, depositions upon written question or oral examinations or both is set forth below.

## JURISDICTION

6. The Court has jurisdiction over this motion pursuant to, among other things, 28 U.S.C. § 1334. The consideration of this motion is a core matter under 28 U.S.C. § 157.

## BACKGROUND

7. The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 8, 2019 (the "Petition Date"). Prior to bankruptcy, the Debtor was the sole owner of a company called Indigo Interactive. Indigo was a local tech firm that provided software products to quality assurance organizations in the education and healthcare compliance market.

8. David P. Leibowitz was appointed as the interim trustee in the case pursuant to 11 U.S.C. § 701 and now serves as the permanent trustee in the Case. The Trustee is duly qualified and has all the powers of a trustee under, among other provisions, 11 U.S.C. § 704.

9. The Debtor's meeting of creditors began on January 3, 2020 and has been continued several times. Over the last few months, the Trustee and Harvest requested that certain documentation be provided by the Debtor in order to fully investigate her financial affairs and determine whether a motion to dismiss under section 707 or an adversary seeking denial of discharge or dischargeability under section 523 or 727 are appropriate in this Case. Certain documents have been provided in response to this informal request and Harvest has been reviewing them. Additional documents may be needed to fully evaluate the Debtor's assets and liabilities and whether she failed to disclose property in her bankruptcy schedules. Harvest does not intend to seek again the documents that have been provided.

10. At the meeting of creditors, the Trustee indicated his intention to seek an extension of the deadline to object to discharge for a period of four-months beyond the then current deadline of March 3, 2020. The Debtor indicated it had no objection to the Trustee's requested extension.

11. Based upon the Trustee's representation that he would be seeking an additional four-months to object to the Debtor's discharge, Harvest waited to file its own motion to extend the time for objecting to the discharge of the debts the Debtor owes Harvest so that the dates would run on parallel tracks.

12. Notwithstanding the Trustee's stated intention to seek a four-month extension of the § 727 deadline, at the hearing on Harvest's motion to extend the time for it to file objections to the Debtor's discharge, the Trustee instead pared down his request to a 30-day extension, which then

resulted in a similar extension of the time for Harvest to object under 11 U.S.C. §§ 727 and 523.

13. Harvest is seeking the current examinations under Rule 2004 as part of its diligence to determine whether the amount the Debtor owes Harvest is nondischargeable and to determine the Debtor's entitlement to a discharge under § 727.

## THE PROPOSED EXAMINEES

14. The entities that Harvest desires to examine at this time – i.e., the Examinees -- without prejudice to conducting other examinations, are the following:

    a. **The Debtor**. Harvest seeks to examine the Debtor to, among other things, ascertain the status of the assets the Debtor listed in the financial statement she submitted to Harvest, including the Jordan Property; the validity of the invoices that Harvest funded; the Debtor's assets and liabilities generally; the Debtor's management of Indigo; and the Debtor's entitlement to a discharge generally and of the debt she owes Harvest.

    b. **The Debtor's mother, Nadia Karadsheh**. Harvest seeks to examine the Debtor's mother because the Debtor told Harvest that her mother has an interest in the Jordan Property.

    c. **American Speech Language Hearing Association ("ASHA")**. ASHA was a customer of Indigo. Harvest's records indicate that $75,950 of invoices that Indigo claims it submitted to ASHA were never paid by ASHA (the "ASHA Open Invoices"). Harvest provided the Debtor with funds on account of the ASHA Open Invoices. ASHA has informally indicated that it never received the ASHA Open Invoices, which raises disturbing question about the legitimacy of the ASHA Open Invoices – *i.e.*, did the Debtor create fake invoices for work on behalf of ASHA and submit them to Harvest to fraudulently obtain funding? At this time, Harvest does not seek to conduct an oral examination of ASHA, but

instead seeks to obtain documents and responses to written questions to investigate the validity of the ASHA Open Invoices.

        d.    **Commission on Accreditation For Respiratory Care ("COARC").** COARC also was a customer of Indigo. Harvest's records indicate that $83,700 of invoices that Indigo allegedly submitted to COARC were never paid (the "COARC Open Invoices"). Harvest provided the Debtor with funds on account of the COARC Open Invoices. COARC has informally indicated that it paid all of the invoices received from Indigo, which, again, raises disturbing questions about the legitimacy of the COARC Open Invoices, including whether these invoices are legitimate documents evidencing amounts owed for services performed. At this time, Harvest does not seek to orally examine COARC, but instead seeks to obtain documents and responses to written questions to investigate the validity of the COARC Open Invoices. At this time,

        e.    **Council on Social Work Education ("CSWE")**. CSWE also was Indigo's customer. Harvest's records indicate that $101,500 of invoices Indigo submitted to CSWE were never paid (the "CSWE Open Invoices"). CSWE has informally indicated that it has paid all of the invoices Indigo sent to it for services performed, which again raises important questions as to whether Indigo and the Debtor created fake invoices to defraud Harvest. At this time, Harvest does not seek to orally examine CSWE, but instead seeks to obtain documents and responses to written questions to ascertain the validity of the CSWE Open Invoices.

        f.    **Commission on Accreditation of Allied Health Education Programs ("CAAHEP").** CAAHEP also was Indigo's customer. Harvest's records indicate that $37,725 of invoices Indigo submitted to CAAHEP were never paid (the "CAAHEP Open Invoices"). Like the other former Indigo customers discussed *supra*, informal discussions with CAAHEP revealed they never received the CAAHEP Open

Invoices. At this time, Harvest does not seek to orally examine CAAHEP, but instead seeks to obtain documents and responses to written questions to ascertain the validity of the CAAHEP Open Invoices.

## DISCUSSION

15. A party-in-interest may conduct an examination of any entity to discover information relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to discharge." Fed. R. Bankr. P. 2004(b).

16. It is generally recognized that "[t]he scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted." *In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376, 379 (Bankr. N.D. Ill. 1996). Because "the primary purpose of a Rule 2004 examination is to permit the trustee to quickly ascertain the extent and location of the estate's assets," courts recognize that Rule 2004 allows for a "fishing expedition" of the creditors and other parties that had dealings with the debtor without the limits placed upon an examination under the Federal Rules of Civil Procedure. *Id*. at 380. *See also Pontikes v. SIP Claimants* (In re Comdisco, Inc.), No. 06 C 1535, 2006 WL 2375458, at *6 (N.D. Ill. Aug. 14, 2006); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985).

17. Upon entry of an order authorizing an examination pursuant to Rule 2004, the production of documents and attendance of witnesses for examination may be compelled by subpoena as provided in Rule 9016. Fed. R. Bankr. P. 2004(c).

WHEREFORE, Harvest requests the entry of an order substantially in the form appended hereto that authorizes it to conduct examinations under Rule 2004 of the Examinees, and that provides such other and further relief as is just and proper.

{00164691}

Dated: March 23, 2020                Submitted by:

                                              **Harvest Finance Group LLC**

                                              By: */s/* William J. Factor
                                              One of Its Attorneys

William J. Factor ((6205675)
Ariane Holtschlag (6294327)
**FACTORLAW**
105 W. Madison, Suite 1500
Chicago, IL 60602
Tel:    (312) 878-4830
Fax:   (847) 574-8233
Email:  wfactor@wfactorlaw.com

{00164691}